UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA


EDWIN AGUILAR IBARRA,                          CASE NO:    5:16-cv-55

ODELIN MONTAS,

RENE CARDENAS,

ALFREDO JESUS CHACON,

ROGERIO CHAVES SCOTTON,

GLEND STEWART,

ERNESTO ROMERO VIDAL,

          PLAINTIFFS,

     vs.


GEO GROUP INC.,

GEORGE ZOLEY,

D. RAY JAMES CORRECTION FACILITY,

WARDEN, TRACY JOHNS,

          DEFENDANTS,
_____/


CLASS ACTION COMPLAINT FOR UNPAID WAGES,
FORCE SLAVE LABOR AND AN WRIT OF HABEAS
CORPUS PURSUANT TO 28 U.S.C. § 2241 FOR
VIOLATION OF CONSTITUTIONAL AND INTERNATIONAL FUNDAMENTAL
RIGHTS

The Plaintiff in this case are currently Federal Inmates housing at D. Ray James Correction Facility and employed by the Geo Group, Inc., (GEO), a for-profit, multinational corporation engaged in the business of incarceration. GEO owns and operates the D. Ray James Correction Facility, a private prison for federal inmates.

When GEO sign a contract with the Federal Bureau of Prisons, they promised to create of hundreds of quality jobs in Folkston GA. However, GEO unlawfully used the Federal Inmates to clean, maintain, and operate the facility. **GEO GROUP PAYS INAMTES $0,50 to $1,00 per day, or wage at all, for their labor.** In 2013 the GEO Group Inc., reported 4 billion in revenues.

The Federal Bureau of Prisons designate lower security inmates to D. Ray James Correction facility, in which operates the facility as a middle high.

GEO unlawfully uses federal inmates to clean, maintain, and operate the facility. Mostly of the inmates are illegal immigrants, in which are not allowed to working in the United States.

Furthermore, rules and regulation from department of justice [BUREAU OF PRISON](28 CFR PART 523)(BOP-1112-F)(RIN 1120-A,B12) exempt inmates aliens with confirmed orders of deportation, excludion, removal or detainer from the "satisfactory progress in a literally program" or labor, provision of the violent crime control and law enforcement act of 1994 (VCCLEA) and/or the prison litigation reform act of 1995 (PLRA).

At D. Ray James Correction Facility, inmates like myself receive threats and unusual punishment and have they good time conduct (GTC) taking way if refuse work, medical or

2

the disgraceful forgery and fraudulent GED programs.

GEO continue to force inmates into programs as the GED so they can continue to profit from the fedeal tax-money. Numerous inmates are college graduate, has presented they crendentials or they GED diploma so they could be excluded from participation in the programs, still they have been threat and punish for failed to participated in such programs. As well into force inmates into take the forgery GED, some the jobs that would pay $7,00 GEO would tell the inmate to accept the GED programs and then the inmante could get a raise to $10,00 or $15,00 dollar per month.

GEO Group Inc., a Boca Raton corporation reported 4 billion in total revenues in 2013. In addition, GEO Group violates federal laws prohibiting forced labor when it forced plaintiffs and others to work, cleaning, the "pods" were we are housed. GEO Group (DRJCF) coerced inmates to cleaning the "pods", maintain the facility and participation in fraudulent programs by use threatening to put those who refused to work or participation in the "hole" [S.H.U.] or taking some or all of they privilege and good time conduct as evidence will show.

In 2011, the United States Nations special rapportary on torture called for the end of solitary confinement, citing the severe mental pain and suffering it causes. See RICK RAEMISCH, MY NIGHT IN SOLITARY, N.Y. TIMES, February 20, 2014.

GEO'S policies violated principles of justice, equity, B.O.P. policies, federal laws and good conscience.

GEO Group is unjustly enriched when it slave inmates like myself for their labor and fraudulent programs.

3

## STATEMENT OF THE CASE

1. In the course of been house in the D. Ray James Correction Facility, knowing by the inmates as the Hitler Camp (or concentrate immigrants camp), petitioner, and others are force and submitted to scrubbed bathrooms, showers, toilets, and windows through GEO'S D. Ray James Correction Facility. They cleaned and maintained GEO'S on-site medical facility (knowing as the Hitler chamber), cleaned the medical facility's toilets, floor and windows, cleaned patient rooms and medical staff offices, swept, mopped, stripped, and waxed the floor of the medical facility, did medical facility laundry, swept, mopped, stripped and waxed floor throughout the facility, did inmate laundry, prepared and served inmates meals, assisted in preparing catered meals for staff, performed clerical work for GEO, prepared clothing for newly arriving inmates, provided barber services to inmates, ran the facility's law library, cleaned the facility intake areas, and solitary confinement unit, deep cleaned the facility's warehouse, and maintained the exterior and landscaping of the GEO building, welding, painting and others. The inmates also is exposed to toxic products without the proper and safet and proper material.

2. Some the job's defendant paid plaintiffs $0,50 a day.[paid by food credit or phone].

3. Defendant thus violated Georgia minimum wage order because that order requires employers like GEO to pay

4

their employees at least statutory minimum wage for each hour worked; that alone in violated federal laws by force illegally immigrants to a slave labor.

4. As result of GEO Group's violation of the MWD and federal laws, plaintiffs seeks actual damages on his behalf, sanction as well as cost of this suit.

5. GEO staff also randomly selected six inmates per pod each day and force them to clean the pods. In the hand book that GEO distributed to the inmates, GEO announced a "Housing Unit Station" policy informing the people held at the facility that "[e]ach and every inmate must participate in the facility's sanitation programs."

6. GEO staff forced petitioner and other federal inmate to clean the facility's pods for no pay and under threat of solitary confinement as punishment for any refuse to work or participate in any of the fraudulent programs including GED that is given in spanish by a inmate.

7. GEO staff thus violated federal law prohibiting force labor. 18 U.S.C. § 1589. Specially illegal immigrants.

8. As a result of GEO, the defendant violation of federal forced labor statute, plantiffs seek actual damages, punitive damages, protection against unusual punishment and solitary confinement, manpatory restitution, on behalf of inmates and on behalf of all defendant's other similarly-situated inmates,

as well as fee cost, pursuant to 18 U.S.C §§1593 and 1595.

9. Finally, GEO was unjustly eriched when it paid its employees $0,50 per day for their labor Geo's pay policies violated principles of justice, equity, and good concience.

## PARTIES, JURISDICTION
## AND VENUE

10. Plaintiffs Rogerio Chaves Scotton is in this facility from approximately July 30, 2014 though the present.

11. EDWIN AGUILLAR IBARRA IS CURRENTLY IN THIS FACILITY.

12. Odelin Montas is currently in this facility.

13. Rene Cardenas is currently in this facility.

14. Alfredo Jesus Chacon, was release in January 2016.

15. Vladimir Jean Baptiste was in this facility for two years and was transfer due to retaliation.

16. Marco Correa is currently in this facility.

17. Tomas Rios is currently in this facility.

18. Antonio Butle is currently in this facility.

All the inmates mention above and in the exhibit 1 is in this facility or was in this facility under threats and was force to slave themselves.

19. Defendant The GEO Group Inc., is a registered Florida Corporation with a principal office street address of 624 N.W. 53 rd street, suite 700, Boca Raton, Fl 33487.

20. Jurisdiction is conferred upon this court by 28 U.S.C. § 1331, this case arising under 18 U.S.C § 1595.

21. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1332(d), as the pulative members of the alleged classes seek damages in excess of $100,000,000.00.

22. Plaintiffs requested that this court exercise supplemental jurisdiction over their state laws claims arising under the Georgia minimum wage order and the Georgia common law 28 U.S.C. § 1367.

23. Venue is proper pursuant to 28 U.S.C § 1391(b)(2) because the event or omission giving rise to the claims occurred in the district of Georgia.

## RULE 23 RULE ALLEGATION AS TO THE "MINIMUM WAGE CLASS"

24. Petitioner bring their count I MWO claim, below, as a Fed. R. Civ. P.23 class action, on their own behalf and on behalf of a class for which plaintiffs seeks certification.

25. Plaintiffs count I MWO claim does not concern defendant's employment of the plaintiffs and others similarly situated in GEO'S "detaineed voluntary work programs." Plaintiffs' count I MWO claim does not concern the mandatory, uncompensated work plaintiffs and others similarly situated performed under defendant's housing unit sanitation policy.

26. Pending any modifications necessitated by discovery, plaintiffs preliminarily define this minimum wage class as follows:

27. All Federal Inmates who performed work for GEO at the D. Ray James Correction Facility in the Detainee work program between January 2012 and the present.

28. This action is properly brought as a class action for the following reason:

29. All Federal Inmates alien that has been force to a labor were uniformly paid $0,50 to a $1/day of work and were thereby denied required minimum wages for all hours worked, force to slave work under threats and outrageous unusual punishment; that alone in force ilegal immigrants into violated the United States laws pursuant to 8 U.S.C § 1324(b) § 1324(a) [ unlawful employment of alien].

30. The class is so numerous that joinder of all the potential class members is impracticable. Plaintiffs allege that the number of class members exceeds 1000 membership in the class is readily ascertainable from defendant's inmates

and employment records.

31. The operative question of law and fact regarding
the liability of defendant are common to the class and predominate
over any individual issues which may exist. Common question
of law and of fact included: whether plaintiffs and the class
members were entitle to the protection of the MWO and federal
laws, whether plaintiffs and the class members performed compens-
able work, and whether plaintiffs and the class members were
paid 0,50 to a $1,00 per day for their labor. Whether plaintiffs
was induce and force to, under threat to violated the United
States laws by work illegally without proper documentation.
The claims asserted by plaintiffs are typical of the claims
of all class members. This is an uncomplicated case of unpaid
minimum wages. The claim at issue arises from a policy applicable
to all members of the class. Each member of the class suffered
and continue to suffered the same violations or others that
give to plaintiffs' claims. A class action is superior to other
available methods for the fair and efficient adjudication of
this controversy because numerous identical lawsuits alleging
identical causes of action would not serve the interests of
judicial economy.

32. The representative plaintiffs will fairly and
adequately protect the interests of the members of the class.
Because all class members were subject to the same violation
of law perpetrated by defendant, the interest of absent class
members are coincident with, and not antagonistic to, those
of plaintiffs.

The representative plaintiffs will litigate the claim fully.

33. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for defendant [GEO]. If defendant's $0,50 per day policy was unlawful as applied to the representative plaintiffs, it was unlawful as applied to the absent members of the putative class.

34. Those class members who worked for defendant for short period of time have small claims which they are unlikely to bring individually. All members of the class have claims which are factually very similar and legally identical to plaitiffs'. Thus, the interest of members of the class in individually controlling the prosecution on defense of separate actions is slight, while the broad remedial purpose of the MWO counsels toward vindicating the rights of those employees with small claims as part of the large class.

35. Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

36. Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

37. It is desirable to concentrate this litigation in this forum because all claims arise in this judicial district.

38. This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage and hours cases to both class litigation and the use of representative testimony and representative documentary evidence.

39. The contours of the class will be easily defined by reference to the detention and payroll documents defendant created and maintained.

## COUNT I

### GEORGIA MINIMUM WAGES OF WORK AS IMPLEMENTED BY THE GEORGIA MINIMUM WAGE ORDER.

40. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 to 23 above as if fully set forth herein.

41. As set forth in paragraphs [24 to 39 "rule 23 class"], supra, plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

42. This court concerns defendant's employment of

11

the plaintiffs and others similarly situated in GEO'S "detaineed inmate voluntary work programs. This court does not concern the mandatory, uncompensated work plaintiffs and others similarly situated performed under defendants housing unit sanitation policy.

43. Defendant, the GEO Group, Inc., was plaintiffs and others' "employer" as that term is defined by the MWO because it employed plaintiffs and others under Georgia laws, and in Georgia.

44. The GEO Group operate a retail and service business or enterprise covered by the wage order in Georgia. GEO sells the service of incarcerating people. According to GEO, it "is the World's leading provided in the delivery of diversified correctional, detention, and residential treatment services to government agencies around the globe". GEO generates 50% or more of its annual dollar volume of business from the sale of such services.

45. The GEO Group operates a health and medical business or enterprise covered by the wage order. GEO provides health services to the inmate population at D. Ray James Correction Facility.

46. The GEO Group operates a food and beverage business or enterprise covered by the wage order. GEO prepares and offers for sale food for consumption both on and off the

premises of its D. Ray James C.F. GEO Group also prepares and offers for sale food and beverages at its on-site commissary.

47. Plaintiffs and other were GEO's employees as that term is defined by the MWO because they performed labor for the benefit of GEO in which GEO commanded when, where, and how much labor they would perform.

48. GEO violated the MWO when it refused to pay plaintiffs and others minimum wages for all hours worked and worse, threat plaintiffs and punish others for refuse to work as an slaves.

49. Plaintiffs performed numerous hours of work for GEO in GEO'S "detainee voluntary work programs" and unvoluntary by outrageous threats and punishments. GEO did not compensate plaittiffs work at the required Georgia States minimum wage rates specified in the applicable annual wage orders. Geo compensated plaintiffs' work in the "detainee voluntary work program" at the rate between $0.50 to $1.00 per day.

50. Plaintiffs and others have suffered lost wages and lost used of those wages in an amount to be determined in trial; that alone with lost of pain and suffer under the unusual punishment.

51. Plaintiffs and others are entitle to recover unpaid minimum wages and cost of the suit.

## RULE 23 CLASS ALLEGATIONS AS TO THE
## "FORCED SLAVE LABOR CLASS".


52. Plaintiffs bring their court it slave labor claim, below as Fed. R. Civ. P. 23 class action, on their own behalf and on behalf of the class for which plaintiffs seek certification.


53. Plaintiffs count II focer labor claims concerns the mandatory, uncompensated work plaintiffs and others similarly situated performed under defendant's housing unit sanitation policy. Plaintiffs count II force slave labor claim does not concern the work the plaintiffs and others perfomed GEO'S "voluntary detainee" work program. Plaintiffs count II force slave labor claim concerns mental, abuse, unusual punishement, medical condition in violation of eight amendment.


54. Pending any modification necessitated by discovery, plaintiffs preliminarily define this forced labor class as follows:


> ALL INMATES WHO WERE FORCE, THREAT AND
> PUNISHED TO PERFORM UNCOMPENSATED WORK
> FOR GEO AT D. RAY JAMES C. F. UNDER
> DEFENDANT'S HOUSING UNIT SANITATION
> POLICY BETWEEN JANUARY 22, 2013 AND
> PRESENT.


55. This action is properly brough as a class action for the following reasons:

All of the members of the force slave labor class were forced to work for CEO for no pay during their detention under the threats and unusual punishment.

56. The class is so numerous that joinder of all the potential class members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the control of defendant. However, upon information and belief, plaintiffs allege that the number of class members exceeds 1200. Membership in the class is readily ascertainable from defendant's inamtes records.

57. The operative questions of law and fact regarding the liability of defendant are common to the class and predominate over any individual issues which may exist. Common question of law and of the facts include:

> WHETHER DEFENDANT'S POLICY OF REQUIRING PLAINTIFFS AND THE CLASS MEMBERS TO CLEAN THE CELLS ON THEIR PODS UNDER THE THREATS OF MORE PRISON TIME BY TAKING THE GOOD TIME, AND SOLITARY CONFINEMENT VIOLATED 18 U.S.C. § 1589 AND WHETHER PLAINTIFFS AND THE CLASS MEMBERS WERE NOT PAY FOR THEIR WORK CLEANING CELLS.

The claims asserted by plaintiffs are typical of the claims of all of the class members. The claim at issue arises from a policy application to all members of the class. each

15

member of the class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuit alleging identical causes of action would not serve the interests of judicial economy.

58. The representative plaintiffs will fairly and adequately protect the interests of the members of the class. Because all class members were subject to the same violation of law perpetrated by defendant, the interests of absent class members are coincident with, and not antagonistic to, those of plaintiffs.

The representative plaintiffs will litigate the claim fully.

59. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for defendant. If defendant's forced slave labor policy was unlawful ad applied to the representative plaintiffs, it was unlawful as applied to the absent members of the putative class.

60. These class members who worked for defendant for short period of time have small claim which they are unlikely to bring individually. All members of the class have claim which are factually very similar and legally identical to plaintiffs'. Thus, the interests of members of the class in individually

controlling the prosecution or defense of separate actions is slight, while the remedial purpose of the forced labor statute counsels toward vindicating the right of those employees with small claims as part of large class.

61. Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

62. Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

63. It is desirable to concentrate this litigation in this forum because all claims arose in this judicial district.

64. The class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of this litigation in this forum because all claims arose in this judicial district.

65. The contours of the class will be easily defined by reference to the detention records defendant created and maintained.

"

"

"

COUNT II

FORCE LABOR

18 U.S.C. § 1589

66. Plaintiffs repeat and reallege each of the allegation contained in paragraphs 1 to 23 above.

67. As set forth in paragraph 52 to 65, supra, plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated performed under defendant's housing unit sanitation policy. This court does not concern the work the plaintiffs and others performed with defendant's "voluntary detainee work program."

68. Defendant violated the federal forced labor statute when it coerced plaintiffs and others to work cleaning pods for no pay.

69. Defendant coerced this labor through outrageous threats, unusual punishment and not any safety material. That those who refused to perform such uncompensated work would be subjected to discipline, up to and including solitary confinement.

70. Defendant saved costs associated with paying for custodial work by using the uncompensated and coerced labor of plaintiffs and others to clean cells and living areas.

71. Defendant provided or obtained the labor or services of plaintiffs and others by means of physical restraint or threat of physical restraint to plaintiffs and others. 18 U.S.C. § 1589(a)(1).

72. Defendant provided or obtained the labor or services of plaintiffs and others by means of serious harm or threat of serious harm plaintiffs and others. 18 U.S.C. § 1589(a)(2).

73. Defendant provide or obtained the labor or services of plaintiffs and others by means of a scheme, plan, or pattern intended to cause the plaintiffs and others to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint, including solitary confinement. 18 U.S.C § 1589(a)(4).

74. Plaintiffs and others similarly situated were victims of forced labor as defined by 18 U.S.C § 1589.

75. Defendant perpetrated the offense of force labor against the plaintiffs and others. 18 U.S.C § 1589(a).

76. Defendant knowingly benefitted financially from participation in a venture defendant knew or should have know engage in unlawful coercion of labor in violation of 18 U.S.C § 1589.

77. Plaintiffs and others have suffered damages in an amount to be determined at trial.

78. Plaintiffs and others are entitled to recover compensatory and punitive damages. 18 U.S.C. § 1593.

79. Plaintiffs and others are entitle to recovers their reasonable attorney fees. 18 U.S.C. § 1595(a).

## RULE 23 CLASS ALLEGATION AS TO THE
## "UNJUST ENRICHMENT CLASS"

80. Plaintiffs bring their count III <u>Unjust Enrichment claim</u>, below, as a Fed. R. Civ. P. 23 class action, on their own behalf and on behalf of a class for which plaintiffs seek certification.

81. Pending any modification necessitated by discovery, plaintiffs preliminarily define this Unjust Enrichment Class as follows:

> All civil federal inmate who performed work for GEO at the D. Ray James C.F. in the "Detainees Voluntary Work Programs" between January 22, 2013 and the present.

82. This action is properly brought as a class action for the following reason:

83. All of defendant's employees in the "Detainee Voluntary Work Program" were uniformly paid $0.50 to $1.00 of

work and defendant was thereby unjustly enriched.

84. The class is so numerous that joined of all the potential class members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the control of defendant. However, upon information and belief, plaintiffs allege that the number of class members exceeds 1200. Membership in the class is readily ascertainable from defendant's detention and employment records.

85. The operative question of law and fact regarding the liability of defendant are common to the class and predominate over any individual issues which may exist. Common questions of law and of fact include: Whether defendant's retention of any benefit collected directly and indirectly from plaintiffs' and others' labor violated principles of justice, equity, and good conscience, and whether plaintiffs and the class members were paid $0.50 to $1.00 per day for their labor.

The claims asserted by Plaintiffs are typical of the claims of all class members. This is an uncomplicated case of defendant procuring very nearly free labor from a detainer workforce. The claim at issue arises from a policy applicable to all members of the class. Each member of the class suffered the same violations that give rise to Plaintiffis' claims. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuit alleging identical causes of action would not serve the interests of judicial economy.

86. The representative plaintiffs will fairly and adequately protect the interests of the members of the class. Because all class members were subject to the same violations of law perpetrated by Defendant, the interests of absent class members are coincident with, and not antagonistic to those of plaintiffs. The representative Plaintiffs will litigate the claims fully.

87. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for Defendant. If Defendant's $.0.50 to $1.00 per day policy was unlawful as applied to the representative Plaintiffs, it was unlawful as applied to the absent members of the putative class.

88. Those class members who worked for Defendant for short period of time have small claims which they are unlikely to bring individually. All members of the class have claim which are factually very similar and legally identical to Plaintiffis'. Thus, the interest of members of the class in individually controllin the prosecution or defense of separate actions is slight.

89. Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

90. Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

91. It is desirable to concentrate this litigation in this forum because all claims arose in this judicial District.

92. This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of labor cases to both class litigation and the use of representative testimony and representative documentary evidence.

93. The contours of the class will be easily defined by reference to the detention and payroll documents Defendant created and maintained.


### COUNT III
#### Unjust Enrichment
#### GEORGIA COMMON LAW


94. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 to 23 above.

95. As set forth in paragraphs 80 to 93, supra, Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

96. This count concerns Defendant's employment of the Plaintiffs and others similarly situated in GEO'S "Detainee Voluntary Work Programs". This court does not concern the mandatory,

uncompensated work Plaintiffs and others similarly situated performed under Defendant's House Unit Sanitation policy.

97. By paying Plaintiffs and others $0.50 to $1.00 per day for all hours worked, Defendant was unjustly enriched at the expense of and to the detriment of Plaintiffs and others.

98. Defendant's retention of any benefit collected directly and indirectly from Plaintiffs' and others' labor violated principles of justice, equity, and good conscience.

99. Plaintiffs and others are entitled to recover from defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiffs and others the benefits it has unjustly obtained.

100. Plaintiffs and others are entitle to recover exemplary damages.

**COUNT IV**
**VIOLATION OF CONSTITUTIONAL**
**AND INTERNATIONAL FUNDAMENTAL**
**RIGHTS**

101. Plaintiffs are seeking for Justice to be rendered from the violation of their constitutional and international **FUNDAMENTAL RIGHTS TO EQUAL JUSTICE.**

102. Plaintiffs and others hereby challenges the Third
Party contract between the Bureau of Prison (BOP) and D. Ray James
Correction facility, a privately owner and operated facility
owned by GEO Group Inc.

103. The class action lawsuit presented before the
honorable court seeks not only mutual damages but as well reserved
for the challenge for the execution or duration of this Criminal
Aliens's Sentence. Henceforth, Plaintiffs and others seeking
that the Court renders justice without any consideration of
administrative remedies ordered for or by any of the Defendant's.

104. Plaintiffs also seeking under 28 U.S.C. § 2241
the protection from this court to prevented the Defendant from
more unusual punishment or any retaliation due Plaintiffs has
exercise his constitutional rights. Defendant's should be preclude
from engage in threat, punish, transfer from the facility, solitary
confinement or any others punishment in violation of inmates
eight amendment.

105. Plaintiffs contends that the exhausting requirement
in **§ 2241 cases is not required by statute according to the
Supreme Court**. And in the case of <u>MCCARTHY v. MADIGAN, (503
U.S. 140, 112 S. Ct. 1081, 117 L. ed. 2d 291 (1992)</u>, superseded
by statute, the Supreme Court states; "exhaustion of remedy
is not required where the administrative body is show to be
biased or has otherwise predetermined the issue before it."

105. Furthermore, plaintiffs contends that in the light of the futility of pursuing administrative remedies, the exhaustion requirement should be waived, and this Court should review the merits of this class action lawsuit and habeas corpus. The attached evidences and administrative remedy herein has proven the futility of the so-called will established administrative remedy process pronounced by the Bureau or any case thereof. As commonly referred to the case of PEREZ-PEREZ v. HANBERRY, 781 F.2d 1477 (11th cir. 1986), which requires Federal prisoners to exhaust all available administrative remedies before seeking habeas corpus relief. In the case of DUFRESNE v. BAER, 744 F.2d 1543 (11th cir. 1984), the Eleventh Circuit held that exhaustion of administrative remedies provided by the BOP for resolution of inmate complaints is a prerequisite to filing suit.

106. Plaintiffs contends that at D. Ray James Facility, the remedies never get responded or even get destroy.

107. Plaintiffs also contends that when requested the BP 10 or BP 11 remedy form, in which are filing to the Bureau Prison Regional or Washington, Defendant engage in more threats and unusual punishment.

Plaintiffs and others has suffer from post-traumatic stress over constant threats and unusual punishment, mental and verbal abuse by the unqualify staff.

The constitution guarantees prisoners the rights of meaningful access to remedy forms or to access court. BOUNDS v. SMITH, 430 U.S. 817, 828 (1977). Hence, at D. Ray James C.F. any inmate that engage to make official complain or began into

exercise they substantial rights is threat and punish with solitary confinement, that alone with his remedy and documents destroy or mislead.

108. The department of justice (B.O.P.) has rule on December 5, 2005, That every inmate Alien with ICE detainer, deportation order, removal, exclusion, is exempt from participation of literacy programs including GED. Hence, GEO Group force every one inmate to do such programs even knowing such inmate already have GED certification. If the inmate refuse to take the program (in which is given by another no qualify inmate) he would suffer constant retaliation and unusual punishment; that alone with reduction in his good time. The law and rules states that every inmate is eligible to a 54 days of good conduct time. Hence, in the D. Ray James C.I. everyone inmate get to be violated and his afforded good time take way.

109. The defendant has also deprive Plaintiffs and others the rights to communication and association, such as attorney visitation, media interviews and others.

Inmates also would get punish when he filing document to court or a lawsuit against prison officials. He would receive an 90 days solitary confined before get transfer to another facility.

The power to grant writ of habeas corpus rests within the jurisdiction where plaintiffs and others members  of the class action is currently incarcerated. The order of such honorable court shall be entered in the records of the court of the district wherein the restraint complained of is had.

110. GEO Group has violated the Plaintiffs and the oters members of the class action eight amendment when deprive the members to minimum living condition, proper and minimum medical care. Such depravation has lead to serious injury or even death. The formally punishment given by the defendant is unconstitutional because it is total "penological justification", and such is "unnecessary" and "infliction of pair," or punishment "grossly out of proportion to the severity of the crime. GEO Group is making millions and millions of dollars a year because they don't paying people from the out-side to work in the facility in part, rather they slave inmates each and every day inside the prison in United States. It is a pretty bug deal that the regular practices that they've condified in policy handbook would be forced labor.  Hence, inmates continue to be outrageous receiving punishment and continue mental and verbal abused and submitted to solitary confinement. Inmates has no other solution or choice to avoid or even to exercise they constitutional rights, rather they launched a hunger-strike to protest their continue illegal and unusual punisment.

111. Because, in its programs statement it is stated that the administrative remedy process duration and response only applies to federal inmates in federal facilities, clear we are able to say that the <u>BUREAU OF PRISON HAS LEFT THE CRIMINAL ALIENS IN PRIVATE PRISON AT THE MERCY OF CORPORATE PROFITS.</u>

112. Such an unjudicious act by the B.O.P. has validated

the statement of the Supreme Court which renders the exhausting

of remedy futile where the administrative body is shown to be

biased. By such act, BOP has left federal inmates denoted as

criminal aliens, with no voice and safeguards to maladminstrative

and malfeasance acts against a private prison like D. Ray James

that slave inmate with profit motivation.

## CONSTITUTIONAL AND INTERNATIONAL
## POINTS AND AUTHORITIES CONSIDERED
## FOR SUIT HEREIN PRESENTED

113. Plaintiffs seeks for equal justice to be executed

and international laws be complie with this outrageous bogus

third party contract between the Bureau of Prison and D. Ray

James correction facility (a privately owned and operated facility

owned by GEO Group Inc.). With such contract, federal inmates

like myself denoted as criminal alien, like plaintiffs and members

of the class, became a slave and are subject to a cruel and

unusual punishment to serve more than 90 percent of their term

of imprisonment with good conduct regardless. Whereas, a citizen,

has served only 65 percent of his term of imprisonment. Such

an act by the Bureau of Prison in behaf of the United States

government is deemed discriminatory by the U.S. constitution

and the international laws.

114. Plaintiffs and members of class contends that,

pursuant to writ of habeas corpus section 2241, reserved for

the challenge to the excution or duration of federal inamte's

<u>sentence</u>, whether U.S. citizen or criminal aliens, the law applies to all without any distinction of back grounds or origin. Based on the foregoing violation, plaintiffs and the members of the class action presented the following **THREE CONSTITUTIONAL AND INTERNATIONAL FUNDAMENTAL POINTS AND AUTHORITIES AS PREMISE FOR CLAIMS OF EQUAL JUSTICE TO BE RENDERED BY THE COURT:**

      I. Citing code federal regulation title 28§ 551.90, state that federal Bureau of Prison staff shall not discrimin-ate against federal inmates on the basis of <u>race, color, religion, sex, disability, and national origin.</u> This including the making of administrative decision, and providing access to work, housing and programs.

      II. Citing constitutional law § 50, delegation of <u>power discretion subsidiary administra-tive policy,</u> states that it is no objection to a statute that the determination of facts, and of the inferences to be drawn from them, in the light of the statutory standards and declaration of policy, call for the exercise of judgment and for the formulation of subsidiary administrative policy within the prescribed statutory framework. Legislative power granted by principle that powers <u>may not be exercised in way that violates other specific provi-sions of the U.S. constitution.</u>

      II. Citing the <u>Vienna Convention,</u> under this a convention, substantive due process is a by such it is required that <u>foreign natio-nals</u> receive greater <u>safeguards</u> than the United States criminal justice system provides to U.S. citizen defendants or criminals. Although treaties do not generally creat individual rights; however, profuse evidence suggests that the <u>VIENNA CONVENTION</u> has the capacity to grant individual rights, and the treaty's language and drafting history indicates that the drafters intended to vest and individual rights in foreign nationals. The strength of this evidence should lead to a uniform recognition of an

individual rights of foreign nationas
by the United States courts and the
criminal justice system.
<u>Foreign Nationals</u> facing convictions
and punishments in the United States
deserve careful consideration of the
right that the <u>VIENNA CONVENTION</u>
<u>ARGUABLY GIVE.</u>

115. To conclude the points and authorities cited,
it is important to point out the fact that the federal constitution
is the supreme law of the land, because it provides the basic
rules for the functioning of the national government. And it
has been doctrine since <u>1803</u>: "Any laws, statutes, regulations
or government policies in conflict with the constitution are
<u>UNENFORCEABLE.</u>"

Pursuant to the aforementioned constitutional and
international and international points and authorities, Plaintiffs
and members hereby asserts that <u>Equal justice</u> be rendered by
the honorable court, and for the laws of the constitution of
the United States be applicable to all federal prisoners, whether
U.S. citizen or criminal aliens.

116. Plaintiffs and members also ask that the question
in review, and provide an injunctive order for the public to
have complete access to the terms and conditions of the <u>third</u>
<u>party contract between the Bureau Prison and D. Ray James</u>. By
such contract, criminal aliens like plaintiffs and members became
slave and trade able goods for private prisons like D. Ray James
to create an economic complex for the shareholders who have
a stake in GEO Group Inc.

117. Plaintiffs and members are violated the rights to prosecute or resolve any ICE, Immigration issues during serving the sentence term.

The attorney general of the United States has promulgated a program statement (P.S.5111.04) as a mandate for all agencies within the jurisdiction of the attorney general to comply. P.S. 5111.04 institution hearing programs (IHP) established by the A.G. and implemented on April 25, 1997, as a ccperative effort of BOP, ICE, and EOIR to ensure that deportation proceedings for criminal aliens begin an expeditiously as possible after the date of conviction and for the proceedings to be completed prior to the expiration of the aliens sentence. In order to avoid the <u>double incarceration with the mandatory 90 days requirements</u> <u>for immigration proceedings and save the federal tax payers</u> <u>money</u>.

118. Plaintiffs also contends that INA § 238(a)(1) requires the government to provide for the availability of removal proceedings at federal, states, and local correction facilities for aliens convicted of specified crimes. Hence, D. Ray James (GEO Group) deprive all inmates from this option and rights because they used plaintiffs and members as a tradeable goods and profits slaves.

119. United States congress has even enacted § 701 of the immigration reform and control act of 1986, pursuant to title 8 U.S.C. § 1252(1), established to require INS, now ICE, to begin deportation hearing as soon as possible after

conviction, so that the question of deportation could be resolved
before the criminal alien's term of imprisonment expired, and
if the prisoner was found deportable, deportation could be accomplished
promptly. Again a policy that is inscribed by the proper authorities
in order to avoid double incarceration that federal inamtes
like plaintiffs and members denoted as criminal aliens face.


120. The act by congress and the mandate by the
attorney general have been completely objected by D. Ra James
administrative under the umbrella of the bureau of prison's
contract. The result of D. Ray James not complying with A.G.
mandate or the law enacted by congress, has caused criminal
aliens such as myself to administratively be detained after
the expiration of a criminal sentence for extended period of
time while deportation or immigration proceedings are completed.
Since other designated federal facilities do provide
aliens inmates with the opportunity to participate in the IHP
as mandated, such act of non-compliance by D. Ray James has
created an imbalance prejudicial to the same laws and policies
applicable to the same particular group of federal inmates denoted
as criminal aliens.


121. The facts that the IHP is made available to
criminal aliens serving sentences at other facilities, creates
and obligation for the consistent application of justice not
only at the trail stage, but also during sentencing time. It
is plaintiffs assertion that such act of non-compliance by D.
Ray James C.F. has created and enhanced an imbalance of justice
that is deemed cruel and unusual punishments of UNEQUAL JUSTICE.

122. Plaintiffs and members of the class action hereby states the facts of unfair and unequal justice:

A. By see the exhibits date monitoring sheets in this class action this can clear see sentence term been manipulated and unusual punishment illegally given by an non federal rather given by an a for-profit and private company (GEO GROUP INC). Additionally a 90 months requirement FOR IMMIGRATION PROCEEDINGS, WILL among to a wrongfully and unnecessary incarceration for a federal crime, and constitutional violation, defendant continue to be profit from the slave inamtes.

B. For the same crime, a U.S. citizen federal inmate will spend last time of incarceration. Because, the U.S. citizen criminal has access to forgiveness policies namely halfway house and so on, and so forth.

C. The U.S. Citizen criminal has been confined in a federal facility, where the government has for motive correction, rehabilitation, and reintegration of prisoners into the society it supposed to be a part of.

D. Whereas, for a criminal Alien under the third party contract with a private and for-profit entity, is exposed to corporate malfeasance

with profit motives. Criminal Aliens like
Plaintiffs and members, have no access to any
forgiveness policy, regardless of good time credit
conduct, criminal Aliens ended up spending close
to 90 percent or more of the sentence as a profit
slave.

123. It is also factual and evident that the no-compliance
action on the part of D. Ray James C.F. are part of the company's
strategy to maximaze profit. Where, as a privately owned and
operated for-profit institution, the motto is to lower costs
and maximize profit. As a corporation, it is also evident that
D. Ray James C. F. by way GEO GROUP Inc., has for mission to
build an economic foundation that is profitable for the share
holders of the company.

124. Plaintiffs contends that It is hard to imagine
any greater disconnect between public good and private profit,
rather the interest of private prison like D. Ray James C.F.
lies not in the obvious social good of having the minimum number
of inmates, but in having as many inmates as possible, housed
as cheaply as possible. For D. Ray James C.F. as a private prison
to fulfill its mission in building an economic foundation for
the empire, of course, the Warden and his administration staff
will trample on the safe guards and the basic manifestations
of EQUAL JUSTICE UNDER A THIRD PARTY CONTRACT WITH NO OVERSIGHT
BY THE GOVERNMENT.

It is therefore conclusive that the profit incentive
mission of private prison has exposed the idea of privatization

of correctional facilities as a compelling interest within the
wall of the penal system to be in ANACHRONISTIC MYTH.

## ARGUMENTS RELEVANT TO THE CONSTITUTIONAL
## AND INTERNATIONAL POINTS AND AUTHORITIES

125. Pursuant to title 28 C.F.R. 351.90, the federal
bureau of prison staff shall not discriminate against federal
inmates on the basis of NATIONAL ORIGIN. This including the
making of administrative decision, and providing access to work,
housing, and programs. By such accord, for the Bureau of Prison
(BOP) to designate plaintiff and the members of the class action
as a federal inmates to a third party private contractor based
solely on our NATIONAL ORIGIN, the Bureau of Prison has acted
in manners that are contrary to the same policies and regulations
it imposes on itself. By reviewing the evidence hereby hereto
and some of the memorandum from the administration of Warden
Tracy Johns and his staff is clearly to see that the facility
does not even fallowed the Bureau of Prison policies and consequently
violated all federal inmates under they custody.

The administration of Warden Tracy Johns stated
that "DRJCF" is a private owned and operated correctional facility
contracted by the federal Bureau of Prison to house federal
inmates consisting primarily of adult male criminal Aliens with
90 months or less remaining on their sentence. Thus, the Warden
Tracy Johns states that there exists a contract to house federal
inmates consisting primarily of Aliens criminals, has estabished

the underlying which shows that the Bureau of Prison staff have intentionally discriminated against the Alien inmates as a federal prisoner, a person who has committed an offense against the United States.


126. There are sufficient evidence to conclude that the Bureau of Prison has acted in manners that are contrary to the rules and regulations that it supposed to bind to. To segregate Federal Inmates into Aliens and citizen as the basis for designation purpose, is discriminatory without any compelling interest for such decision.

By statute, there exists no dissimilarities in classification among federal inmates based on race or more specifically implied national origin to provide housing. for the Bureau of Prison staff to label the inmates as a member of a "protected class" for classification and designation purposes, is injudicious, capricious, and deemed invidious discrimination. Such decision is arbitrary, in excess of statutory jurisdiction as an abuse of discretion, or other wise not full accordance with the laws of the constitution. In fact, it has been established that race-based differentiation is discriminatory.


127. By statute, Congress has delegate the power of custodial duties to the Bureau of Prison under title 18 U.S.C. § 3621 imprisonment of a convicted person, explicitly stated a person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 222 [18 U.S.C. § 3581 et Seq], shall be committed to the custody of the Bureau

Prison until the expiration of the term imposed, or until earlier release for satisfactory behavior pursuant to the provisions of § 3624 or the same title.

128. Under § 0.96 delegation of power, the director of Bureau of Prison is authorized to exercise or perform any authority, functions, or duties conferred or imposed upon the attorney general by nay law relating to the commitment, control, or treatment of person charged with or convicted of offenses against the United States. This includes the taking of final decision or action in subsection (t), in contracting for period not exceeding three years, with the proper authorities of any state, territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of persons convicted of offenses against the United States unde title 18 U.S.C § 4002.

By such delegation of power by Congress to the Bureau Of Prison under the directives of the Attorney General, a Statutory conferred custody has been bestowed upon the Bureau of Prison. In no instance, did such delegation of policy for the Bureau of Prison to act in excess of statutory jurisdiction, authority, or limitation. To invidiously discriminate against Federal Inmates National Origin, is to act in manners without observance of procedures required by law. Instead, the delegation of power bestowed by Congress to BOP, called for the exercise of judgement and the formulation of subsidiary administrative policy within the prescribed statutory framework.

129. For the Bureau Prison staff to subject a "specific Group" of federal inmates denoted as "criminal Aliens" to a private prison, or under the custody of for-profit corporation for care, safekeeping, subsistence, and proper legal procedures, is prejudicial to the statute, contrary to constitutional rights, power, privilege, or immunity, it is plainly short of statutory rights. Congress has bestowed BOP with a statuotorily conferred custody to be in line with the constitution. Because, it is implicitly prohibited for Congress to authorize the passing of legislation that purports to validate any policy that violate the federal constitution.

For the Bureau of Prison to transfer to a private prison (D. Ray James ), a statuotorily-conferred custody of federal inmate like those members of this class action based strictly on national origin is discriminatory. Such transfer further diminishes the inherent human values of federal inmates, who happened to be foreign nationals, under a private institution with the predilection to proffer by any means necessary.

130. The Bureau of Prison cannot use the justice system in a way that blends laws and economics to create a monster conveyor belt that pushes federal inmates (criminal Aliens) into the grid of a privatized system with no oversight. And that is turning justice into profits, and that is no justice. Consequently, administrative staff at DRJCF as a private prison, not properly trained and deficiently paid, due to the inefficience

and the indifference that are an inherent part of the for-profit
dynamics, would eventuate in actions that are deemed contrary
to BOP policies, and with complete disregard to the constitutional
safeguards, or without any observance of the procedures required
by the law.

131. Given private prison the custody of captive humans,
is the same as pushing "a round peg into a square hole." In
fact, the idea of giving private prison like DRJCF the custody
of foreign nationals is incongruent with private profit motives.
In doing so, BOP has subjected foreign nationals to the level
of commodities, foreign nationals like the members of this class
action have became tradeable goods to the lowest bidder. The
ehtos of for-profit correctional facility like DRJCF is to bid
as law as possible and make as much profit as possible.

Consequently the members of this class Action are
exposed to imprisonment time manipulation, malnutrition, inadequate
medical treatment, verbal abuse, sexual harassment, just to
name a few of the private malfeasance acts. (see the exhibits).

132. In fact, it is one thing to hire security guards
to protect DRJCF'S property, but quite another to substitute
them for sworn officers of the law, and bestowed law enforcement
authority upon security guards under not particular state ot
government umbrella or jurisdiction. There exist no statutes,
no regulation, or policies, or even act of Congress where it
is inscribed that the power delegated to the Bureau of Prison,

entitles its staff to contract for the custody of federal inmates
with a private entity where non-sword officers of the law (civilian
untrained security guards) will have the authorities to enforce
policies, rules, regulations of the federal bureau of prison
on federal inmates. In doing so, BOP staff subjugated human
captives to the authority of civilians. AND THAT IS ANARCHY!!!

133. The act of the administration of DRJCF is grossly,
disgraceful and outrageous inappropriate. It and everything
they have done as the member of the class action has presented
under this documents, is that they engage into cover-up every
and any fraud  possible with the eye on the dollar and cents.

Every single time the facility is due for inspection
by the authorities of Bureau of Prison, they began into over
slave the inmates to clean, paint, fix, and make the place so
perfect to avoid sanctions, loss of the constract, and anyone
to see how mistreat is the federal inmates in this place.
In fact, if any inmates would began into engage in conversation
with any official from BOP, he will face serious retaliation,
unusual punishment and solitary confinement.

After the inspection is over, the normal abuse began
over again with the only motivation of dollar and cents.

## CONCLUSION

The human spirit can still be nurtured by another
human being reaching out to help, even when one of those human

beings wears prison clothes and the other wears black robes.
With this class action law-suit the members of the action claims
for equal justice and that the saction mention above be apply
to GEO GROUP INC., that has continue to unjustice profit by
slave live humans beings. Just because the members of this action
are foreign national, another word an Alien who happened to
have been convicted of crime against the United States, does
not make the members of this class action lesser of human. The
constitution of the Untied States applies the laws to all persons
within the jurisdiction of the Untied States EQUALLY. By the
Vienna Convetion, the United States government has guaranteed
EQUAL JUSTICE to all the Members of this class action government
as a reciprocal procedure through diplomatic channels.

      The Supreme Court of the United States has suggested
that, in criminal cases, rights can be implied, hence to be
human is an inherent right to be equal.

      Wherefore, this hereby claims for equal justice
and fair practice from the honorable judge of said court. Criminal
Aliens should not have to spend 90% or more of time of imprisonment
regardless of good time credits; whereas, a U.S. citizen criminal
spend 75 percent or less for the same crime and sentence. The
Bureau of Prison cannot use the justice system in a way that
blends laws and economics to create a monster conveyor belt
that pushes federal inmates criminal Aliens into the grid of
a privatized system with no oversight. In so doing, BOP as a
government agency, has trampled on the same rules, regulations,

and laws that the constitution imposed on the government.

As shown this motion, private operation prison like D. Ray James, presents substantial challenges to contracting agencies like BOP. One prominent challenge for BOP is to reezamine its designation practices, where only criminal Aliens get to be transferred to the hands of the private contracts. Such practice is deemed injudicious and prejudicial to the same statute (title 28 § 551.90) it imposes on itself.

Where it is stated in the code of federal regulation under tile 28 § 551.90: "Federal Bureau of Prison Staff shall not discriminate against Federal Inmates on the basis of Race, Color, Religion, Disability, Sex, and National origin. This includes the making of administrative decisions, and providing access to work, housing, and programs." BOP MUST COMPLY TO THE SAME POLICIES IT IMPOSE.

Another violation in fact is that, a private contract facility, like D. ray James, lacks the authority to enforce Federal Rules, Regulation, and Laws upon Federal Inmates. Hiring civilians as Security Guards cannot by done to U.S. Citizen criminals by the Constitution of the United States, it surely cannot be done to foreign Nationals by the same constitution and the International Standard Laws of Equal Justice and Practice.

The Bureau of Prison as a Federal Agency has for mission to rehabilitate, to correct a societal problem of crimes and punishments. Whereas, a private prison like D. Ray James has a mission is to minimize costs and maximize profits. The latter mission is incongruent with correction or rehabilitation. Its bottom line is dollars $ cents. Monetizing the penal system is purchasing justice, and buying justice is injustice. And

that will never be FAIR AND JUST. Hence, criminal Aliens under the custody of corporation will never see Equal and Fair Justice. Because, the corporation will has actually turned the federal criminal Aliens into a product or commodities that build its economic foundation for the shareholders.

In Octavio Betancur v. TRANCY JOHNS, WARDEN, the U.S. Assist Attorney has even mention that the government has zero intention into rehabilitation of any criminal that faces deportation. The government statement is clear and prove that other then punishment, criminal Aliens became only the interest of dollar and cents in the hands of the private corporation.

Therefore, the violation has became even more serious where a criminal Aliens has been left without any protection or even the Equally protection that this country so promote, the criminal Alien is sold as an Slave by the government into the hands of private prison like D, Ray James with only profit motivation.

Wherefore, Plaintiffs and the members of this class is hereby demands that the honorable court applies the laws of the constitution and the International standard laws to render justice as equal and fair. Criminal Aliens cannot spend 90% or more regardless of good-time credit in complete incarceration, whereas U.S. Citizen Criminal spend 75% or less for the same crime and sentence.

The institution hearing program must be complete with as mandated by the Attorney General, and § 701 of the Immigration reform control act of 1986, pursuant to title 8 U.S.C. § 1252(1), enacted by congress must also be applied to

avoid the double incarceration of punishment suffer by criminal

Aliens at the benefit of a private prison like D. Ray James,

or a corporation like GEO GROUP Inc. It is obvious that the

non-compliance actions or tricks of D. Ray James from the lattice

Federal Regulations is part of the strategic plan for the corporation

to reach the bottom line which is dollars and centes, AND THAT

IS MONETIZE JUSTICE!!!

      Therefore, this court must take the allegations

hereby very serious as the system was creating for punishment

and not for profit. The conduct of this facility and the GEO

GROUP, who has numerous pending law suit, is clear outrageous

and disgraceful as they have for many years unlawful enriched

by torture, abuse, slave criminal Aliens as Plaintiff and the

members of this class action with the only motivation of profit

dollars and cents. To many people has been hurt, to many people

has been permanent damage and injury, to many people has even

die over this continue disgraceful behavior. The thousand of

inmates sentence by the different district courts and judges

has not been sentence to death or to life, they will one day

enjoy the outside society, but this continue torture could make

impossible to any inmate into go back to a normal and proper

life.

      We cannot ignore those facts mention here in this

motion, or avoided to see what has already been disclose to

this court or in the others before. What we could not continue

to do is blind our eyes in this continue grossly behavior that

has cost the life of numerous inmates, where in the numerous complaint and information filed in the different District courts or even civil courts clear prove that this issues has been mention and disclosure before. So the court must not ignore any fact in this motion and must render equal justice to the criminal Aliens as the constitution guarantee equally protection to all.

Base upon the foregoing, it is requested that this court render justice, order a full investigation, began into send the U.S. Marshals and the FBI inside of this facility and interview each and everyone of the criminal Aliens inmates so this court could have clear prove of the torture, threat, and cruel and unusual punishment each inmate is subject in the hands of the administration of Tracy Johns Warden.

This court must also to order the Immigration, now ICE, into process all and any inmates that will be deported before the expiration of the sentence as the established laws required, in order to avoided the double incarceration and the continue trade commodities of federal inmates between private prisons.

Lastly, BOP must review every inmate release day, as this facility has engage into manipulated those release days or even sanction inmates so they could stay longer for profit motivation.

Therefore, this court must order a full investigation by the FBI and U.S. Marshals in this facility, as well sanction GEO GROUP Inc. for grossly and disgraceful violations, in which has cost serious and permanent injury to so many inmates and the life of others.

WHEREFORE, Plaintiff and the members of the class action prays that:

1. The court granted as the pulative members the damage in excess of $1000,000.00.as mention in the ¶ 21.

2. Prompt notice of this litigation be sent to all potential minimum wage class members;

3. Plaintiffs and the minimum wage class be awarded the unpaid balance of the full amount of wages due, together with the cost of this suit. C.R.S. § 8-6-118;

4. Plaintiffs be certified as class representatives of the Unjust Enrichment class as defined above.

5. Prompt notice of this litigation be sent to all potential unjust enrichment class members;

6. Plaintiffs and the unjust enrichment class be awarded compensatory and exemplary damages;

7. Plaintiffs and the class be awarded such other and further relief as may be necessary and appropriate.

8. Plaintiff and class members should be protected by court order from any retaliation, threats, torture, cruel

unusual punishment including solitary confinement by the facility
staff or any other involved in this class action.

9. Plaintiffs and member would pray that this court
enter a official order of full investigation by the FBI in all
the aspects and facts mention above in this action, as well
in the others life was already lost due the inappropriate conduct
of this facility administration.

10. Plaintiffs and members prays that this court
order the minimum and proper medical assistance for those in
need  and has been denied, as well the proper medical assistance
for those who has been injury by the depravation of proper medical
need.

11. Plaintiff and members would request that this
court order the appropriate Immigration deportation process
been force before the expiration of the inmates sentence as
mandatory by statutory laws, and to avoided double punishment.
Numerous inmates has been seating in this facility to long,
and others has been incarcerated to long, so they issue of deportation
should be resolved long time ago, rather them be delay only
because the profit motivation of private prison like D. Ray
James.

Plaintiffs and members of the class prays that this
court held this pleading to a less stringet standard that therefore

be liberally construed. <u>TANNENBAUM v. UNITED STATES, 148 F.3d
1262, 1263 (11th cir. 1998)</u>.


Respectfully Submitted,

RROGERIO CHAVES SCOTTON
REG NO: 99370-004


ANTONIO BUTLER
REG NO: 98401-004


SIMON ODONI
REG NO: 81954-004


Fawzi Atry
70589-067

## EXHIBIT 1

JAYLE MENDEZ, REG NO: 29365-057
MIGUEL CRUZ GONZALEZ
MARCO CORREA CASE NO: 13-20725
RENE CARDENAS, REG NO: 98434-004
JAVIER MAXWELL
OCTAVIO ALBERTO BETANCUR
ISRAEL MOLINA
ANTONIO BUTLE REG NO: 98401-004
VLADIMIR JEAN BAPTISTE REG NO: 99933-004
GLEN STEWART REG NO 41190-086
MARIO CASTILLO REG NO: 13554-085
ALFREDO JESUS CHACON
JORGE LOUIS JAMES QUINTANA REG NO: 59133-074
ERNESTO ROMERO VIDAL
HUSSAIN NAJI ABDULKADIN - TRANSFER AFTER FILE LAW SUIT.
JUAN CARLOS TIRADO BOJORQUEZ REG NO: 40089-086
TOMAS RIOS
FRANKLIN B. GIL REYES REG NO: 72366-004
RUBESN CORDOVA BERMUDEZ REG NO: 09167-196
JOSE MANUEL NOYOLA MARTINEZ 16050-006
ALLAN CABELERO
JORGE GONZALEZ
FERNADO ANTONIO AMATO
EDGUAR AGUILAR REG NO: 00331-004
DONOVAN THOMPSON CASE NO: 13-20907
ALBERTO HIRIATE RODRIGUES REG NO: 02484-029
RAYMUNDO JARMILLO PINEDA REG NO: 64545-019
NICOLAS GODINA REG NO: 27679-298
FRANCISCO ALCAZAR REG NO: 10434-111
FABIO BEDOYA REG NO: 00594-104
ERIK URIARTE CORDOBA REG NO: 98607-004
JAIME GIROD
JOSE MANUEL MARTINEZ
ARNALDO GONZALEZ REG NO: 45666-004
LUIS ARIAS BERTAMANTE

**EXHIBIT 1**

ODELIN MONTAS REG NO: 01775-104

LOPE A. LOPEZ ORTEGA REG NO: 50969-018

GERSON GOMES

EDWIN AGUILAR IBARRA REG NO: 00339-104

SAD SILVA REG NO: 17814-043

SIMON ODONI REG NO: 81954-004

Fawzi ATKA        70589-067

Rogerio C. Scotton  99370-004   cv. 05.16-40

Francisco Gonzalez  49351-004

Olivera Salazar Jairo Enrique. 61735-018

Bejarano-Contreras S. Marcelo. 17748-280 .

Espino-Guerrero Jose. 78481-080 .

Rubio, Nicolas. 62093-112 .

Marcos Galindo  18767-058.

Jose Manuel Cazares Contreras 67367-061 .

2

## CERTIFICATE OF SERVICE

I, *Rogerio Chaves Scotton* , do certify that on this 30th day of June, 2016, I have attached this Class Action (that is under plaintiff and class members constitutional rights), on the Southern District of Georgia in the above proceedings.

I have attached such class action via United States Certified Mail through D. Ray James Correctional Institution's mail facility.

Rogerio Chaves Scotton      *June 30, 2016*
Reg. No. 99370-004               Date
D. Ray James C.I.,
PO Box 2000
Folkston
GA 31537



United States District Court,
Southern District of Georgia,
Office of the Clerk
PO Box 1636
Brunswick,
GA 31520



**The GEO Group, Inc.**

# MEMORANDUM

D. Ray James Correctional Facility
3262 Hwy 252 East
Folkston, Georgia 31537

TEL: 912.496.6242
FAX: 912.496.6147
www.thegeogroupinc.com

**DATE:**     December 18, 2015

**TO:**       Population

**FROM:**     C. Chalmers AW (P)

**RE:**       K-2 Spice

---

Recently we distributed a memo to the population regarding the presence of K-2 Spice, an illegal substance, on the compound. We also advised you that we have had several incidents of inmates smoking K-2 Spice and having severe bizarre behavior, including psychotic episodes and other violent and extremely dangerous behaviors.

When questioned, the inmates involved did not always remember what had occurred. If you use this product you are placing yourself, fellow inmates and staff at potentially great risk.

We have an obligation to ensure your safety while you are confined here. We take this responsibility very seriously and we are confident that you, as a population, expect we take this approach and do everything we can to keep you safe.

We now have information to indicate that some inmates may be heating up batteries in the microwaves to change the chemical compounds of the batteries. The batteries are then scraped apart and the elements of the batteries are then spread on the K-2 Spice in an attempt to elevate the reaction to the user. This is not unlike what is added to methamphetamine on the streets.

You are a very responsible population, and we are sure you do not wish harm to come to anyone here in the facility. I ask that you refrain from using this illegal product. The flow of K-2 Spice will stop and everyone's safety will be improved, if you ***refuse to purchase or use this product.***

      D. RAY JAMES STAFF IS THE ONE THAT BRING DRUG AND CELL PHONES INTO PRISON. IT IS * CELL PHONE NOW IN THE FACILITY.

Slave Labor Suit Against GEO Advances in Denver: Menocal v. Geo Group

Law360, July 8, 2015 - "A federal judge has ruled the owner of a private detention center in Colorado must face a potential class action alleging it violated federal law by forcing immigrant detainees to work for little or no pay.

U.S. District Judge John L. Kane in Denver on Monday denied The GEO Group Inc.'s bid to dismiss claims it violated the Trafficking Victims Protection Act by forcing unpaid detainees to clean their living areas under the threat of solitary confinement.

The judge also allowed the plaintiffs to pursue claims that GEO Group was unjustly enriched by the free labor as well as a "voluntary work program" at the 1,500-bed Aurora Detention Facility, in which detainees did various tasks around the center for $1 per day.

The judge did, however, dismiss claims that the work program violated the Colorado Minimum Wage Order, ruling the workers were not employees under the law.

1

Attorneys for the plaintiffs touted Judge Kane's decision as a historic ruling, and said it is believed to be the first time a court has held that a for-profit immigrant detention contractor may be held liable for alleged violations of the TVPA.

"This case is really important because private companies that are in the business of incarcerating immigrants for profit should not be allowed to pad their profit margins by forcing the detainees to work for nothing, or next to nothing," Brandt Milstein of the Milstein Law Office told Law360 on Wednesday.

Filed last October on behalf of nine current and former detainees, the lawsuit claims they were required to perform tasks like scrub bathrooms, wax floors and maintain the center's landscaping. In return, they were paid $1 per day.  Several detainees were also selected each day to clean the pods for no pay, and coerced into doing the work with threats of solitary confinement, the complaint said.

The plaintiffs alleged the unpaid work violated the TVPA's prohibition on forced labor and sought to represent more than 1,000 detainees who had been coerced into working for free at the Aurora Detention Facility since 2004.

"GEO's pay policies violate principles of justice, equity, and good conscience," the complaint said.

In a statement Wednesday, GEO Group said its facilities adhere to strict standards set by the U.S. Immigration and Customs Enforcement and have received high rankings during independent audits. The Boca Raton, Florida-headquartered company also said its work program's standards and wage rates are set by the federal government.

"GEO's facilities, including the Aurora, Colo. Facility, provide high quality services in safe, secure, and humane residential environments, and our company strongly refutes allegations to the contrary," it said.

GEO Group told the court the case should be dismissed, in part because it said all claims were barred by the so-called government contractor defense. The defense allows private contractors to sometimes share the government's immunity from certain state law claims.

But Judge Kane said the GEO Group's contract with the Department of Homeland Security and ICE didn't prohibit it from paying detainees more than $1 per day or create a "significant

3

conflict" with state law, which is required to assert the defense.

The judge also rejected the company's argument that the TVPA did not apply to immigration detainees. He said higher courts have held the TVPA applies to "whoever ... obtains the labor or services of a person by ... threats of physical restraint."

"In addition, defendants have cited no authority for reading a civic duty exception into [the law], or for applying such an exception to a private, for-profit corporation under contract with the government," Judge Kane wrote.

Milstein said Wednesday the work performed by the immigrant detainees should have been jobs that were filled by the community. He said the plaintiffs hope the ruling could lead to changes in the way GEO Group operates its business.

"Our hope is that building on this ruling we'll be able to stop private prison companies from forcing the people who they detain to do the work of maintaining the facility that the company itself should be tasked with doing," he said.

The plaintiffs are represented by Brandt Milstein of the Milstein

4

Law Office, Andrew Turner of Buescher Kelman & Perera PC,
Alexander Hood of Towards Justice, Hans Meyer of the Meyer Law
Office PC, and R. Andrew Free of the Law Office of R. Andrew
Free.

Geo Group is represented by Shelby A. Felton and David R.
DeMuro of Vaughan & DeMuro.

The case is Alejandro Menocal et al., v. The Geo Group Inc., case
number 1:14-cv-02887, in the U.S. District Court for the District of
Colorado."

- See more at:
http://www.lexisnexis.com/legalnewsroom/immigration/b/outsid
enews/archive/2015/07/09/slave-labor-suit-against-geo-
advances-in-denver-menocal-v-geo-
group.aspx#sthash.PY21N2lg.dpuf